JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Andre Blackman appeals from a judgment of conviction which found him guilty of committing five counts of rape and two counts of kidnapping. He complains that (1) the judgment of conviction is against the manifest weight of the evidence, (2) the court permitted the state to engage in improper cross-examination by asking him why he did not explain his conduct more fully to the police, (3) the court erred by failing to find that the kidnapping counts were allied offenses of similar import to the rape counts, (4) there was insufficient evidence to sustain one of the kidnapping counts, (5) the state engaged in improper argument designed to appeal to the passion of the court, and (6) counsel performed ineffectively by failing to object to the admission of victim impact evidence. We find no error and affirm appellant's conviction.
 {¶ 2} During the time frame in which the offenses occurred, the victim was 14-years-old. Appellant had been living with the victim and her mother for four years. During that time, he developed such a close relationship with the victim that she called him "dad."
 {¶ 3} The first instance of sexual abuse occurred near the end of 2003, during the victim's holiday break from school. She said that she and appellant had been in the basement of the house, practicing karate. After engaging in some horseplay, appellant asked the victim if she wanted a massage. She agreed. He soon deviated from the massage and slid his hand beneath her shorts and digitally penetrated her. *Page 3 
He then moved on top of her and had intercourse with her. The victim said that she could not move out from under him because his weight kept her pinned to the floor. She did not tell anyone about what happened. She said that she knew what to do if a stranger had attacked her, "but when it's somebody you actually care about, that you actually don't want to hurt, you're not sure so I just laid there, and then when I had in my mind I was actually going to get up, I couldn't."
 {¶ 4} The second instance also occurred during that same school break. The victim said that she had been alone in the house, so she went into her mother's room to draw. She heard a door open downstairs and decided to go back to her own bedroom. While in her bedroom, appellant called to her to tell her that she left her drawing supplies on her mother's bed. When the victim reentered her mother's bedroom, she began collecting her drawing supplies. Appellant started "playfully shoving" the victim, but she did not shove back. He then shoved her on the bed and engaged in intercourse with her.
 {¶ 5} The final instance occurred one evening when she and appellant were engaged in conversation while in her mother's bedroom. She thought "he was acting normal again," by talking about school and cartoons. They started "playing around" — trying out karate moves on each other. Appellant then pinned her to the bed and "that's when I knew not to trust him." He then engaged in intercourse with her. *Page 4 
 {¶ 6} The victim's mother testified that around this time, the victim's behavior changed dramatically. Her school grades fell. She began eating constantly and ignoring her personal hygiene. At times, the victim would wet the bed. The mother also found that the victim had hidden knives, hammers, and screwdrivers in her bed, and had scattered broken glass and tacks on the floor near her bed.
 {¶ 7} All sexual offenses against the victim ceased after a conversation the victim had with her mother. She asked her mother if it was permissible for "anybody, family or friend, to touch you in a manner that you don't like and she told me no, and if anybody ever did, you should go and you should tell someone even if they're family * * *." When appellant next approached her, the victim told him that "if you ever touch me again I'm going to tell my mother." The victim said that appellant moved out of the house the following day.
 {¶ 8} The victim did not tell her mother about the abuse, even after appellant moved out. Her grades and attitude continued to deteriorate. During a conversation with one of her teachers, the teacher challenged the victim to take control of her life. Upset and frustrated, the victim blurted out that she had been raped by her mother's boyfriend. The teacher then reported the rapes to the authorities.
 {¶ 9} Appellant testified and denied ever touching the victim. He claimed that his relationship with the victim's mother deteriorated because of his drinking, and that prompted him to move out. He maintained that he had a good relationship with the victim and that after he moved out, she would call him to beg him to return to her *Page 5 
mother's house. Appellant's daughter testified on his behalf and corroborated his testimony regarding the victim's telephone calls, saying that the victim would call constantly to ask when appellant would move back into the house.
 I {¶ 10} Appellant first argues that his convictions for rape and kidnapping are against the manifest weight of the evidence. He notes that the victim's allegations were uncorroborated by any physical evidence, and that the court noted there were "a disturbing number of gaps and inconsistencies which have been most troubling." He maintains that the court should have found that the victim fabricated her allegations as a result of the discord between him and the victim's mother, or that the victim fabricated the allegations to cover up the failings in her own life.
 {¶ 11} When reviewing a claim that a verdict is against the manifest weight of the evidence, we weigh all the reasonable inferences, consider the credibility of witnesses and, in considering conflicts in the evidence, determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, we remain mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. This gives the trier of fact the authority to "believe or disbelieve any witness or *Page 6 
accept part of what a witness says and reject the rest." State v.Antill (1964), 176 Ohio St. 61, 67.
 {¶ 12} Although the court acknowledged certain inconsistencies in the evidence,[1] it did note that the charges were not raised voluntarily by the victim, but were disclosed spontaneously. Moreover, the court believed it significant that there was no other reason at the time for the victim to fabricate the allegations against appellant.
 {¶ 13} Appellant argues that there may have been reasons for the victim to fabricate the allegations: her poor performance in school and constant fighting between appellant and the victim's mother. Although the court made no findings on these points, the court's refusal to give credence to either alternative is supported by competent, credible evidence in the record. The court may well have found evidence that the victim brought knives into her bed and scattered broken glass on the floor near her bed proof that her bedroom space had been invaded. While the victim only testified to one incident occurring in her bedroom (the count on which the court granted a judgment of acquittal), a reasonable trier of fact could have found it indicative of the victim's desire to protect herself. At any rate, defense counsel elicited testimony on different possible explanations as to why the victim might have *Page 7 
fabricated the allegations. We can only conclude that the court rejected these arguments as lacking a foundation in the evidence.
 II {¶ 14} For his second assignment of error, appellant complains that the state used his post-Miranda[2] silence to impeach him at trial, in violation of the Fifth Amendment. Both defendant and his daughter testified on direct examination that the victim had repeatedly tried to contact appellant after he moved out to beg him to return to the house. They apparently intended to show that the victim's strong desire for appellant's return to the house cast doubt on the credibility of her rape allegations. On cross-examination, the state referenced appellant's statement to the police in which he completely denied raping the victim and asked him why he failed to tell the police that the victim had repeatedly tried to contact him after he moved out of the victim's mother's house. Appellant argues that by not saying anything to the police about the calls, he engaged in a form of "silence" and that the state's questioning constituted an unconstitutional comment on his post-arrest right to remain silent under the Fifth Amendment.
 {¶ 15} Appellant did not object to any of the state's questions on grounds related to the Fifth Amendment, so he is deemed to have waived all but plain error.[3] *Page 8 
Crim.R. 52(B) states that plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v. Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 16} It is well established that the state cannot comment on a defendant's post-Miranda silence to impeach exculpatory testimony on the ground that the defendant did not explain his conduct at the time of his arrest. Doyle v. Ohio (1976), 426 U.S. 610. In Doyle, the defendants gave no statements to the police. They testified at trial and gave exculpatory explanations for their participation in a drug transaction. On cross-examination, the state impeached that testimony by asking why they had not offered these exculpatory explanations at the time of arrest. The United States Supreme Court held that this questioning violated the Due Process Clause of the Fourteenth Amendment becauseMiranda warnings contain implicit assurance that silence will carry no penalty. Id. at 617-18. Because a defendant's *Page 9 post-Miranda silence was an exercise of the right to remain silent, the supreme court concluded that, under Miranda, it would be "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial[.]" Id. at 618.
 {¶ 17} In State v. Leach, 102 Ohio St.3d 135, 2004-Ohio-2147, at ¶ 16-17, the Ohio Supreme Court cited to Doyle and stated:
 {¶ 18} "In Doyle v. Ohio (1976), 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91, the United States Supreme Court held that use of a defendant's post-arrest, post-Miranda silence for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment because although `the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings.' Id. Further, the court held that `every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.' Id.
 {¶ 19} `"Ten years later, when confronted with the issue of whether a defendant's post-arrest, post-Miranda silence was admissible as substantive evidence of guilt in the state's case-in-chief, the court held that such use violated due process, noting that `breaching the implied assurance of the Miranda warnings is an affront to the fundamental fairness that the Due Process Clause requires.'[Wainwright v.] Greenfield, 474 U.S. [284] at 291, 106 S.Ct. 634, 88 L.Ed.2d 623." *Page 10 
 {¶ 20} A different rule applies if a defendant makes apost-Miranda statement and then testifies at trial to a different version of events. In State v. Osborne (1977), 50 Ohio St.2d 211, vacated on other grounds sub nom; Osborne v. Ohio (1978), 438 U.S. 911, Osborne spoke to the police several times, but failed to mention that he had an alibi. When he testified at trial and offered the alibi, the state impeached him by noting his failure to mention the alibi to the police. Citing to Doyle, the supreme court held:
 {¶ 21} "If a defendant voluntarily offers information to the police, his toying with the authorities by allegedly telling only part of his story is certainly not protected by Miranda or Doyle. A contrary rule would foreclose any cross-examination, for fear that it might reveal impeaching information intentionally withheld and inextricably interwoven with that which was divulged." Id. at 216. See, also,State v. Zander, Cuyahoga App. No. 86945, 2006-Ohio-4491 (applyingOsborne to uphold impeachment of a criminal defendant who at trial contradicted an assertion in his written statement that he had been "framed" for the charged offenses).
 {¶ 22} By giving the police a written statement, appellant left himself open to impeachment on any matters of importance that were omitted from that statement. On cross-examination, he admitted that he did not inform the police that the victim had repeatedly tried to contact him after he moved out of her mother's house. This is the sort of significant detail which would have been natural to mention in the prior *Page 11 
statement, and hence was subject to impeachment because of its omission. The court did not err by permitting the state to question appellant on this matter.
 III {¶ 23} Appellant next argues that the court erred by failing to find that the convictions for the kidnapping counts were allied offenses of similar import to the rape counts and should have merged into a single count of conviction. He maintains that the alleged force used in the rape counts was the same conduct which supported the kidnapping counts.
 {¶ 24} R.C. 2941.25(A) states that when the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. InState v. Kent (1980), 68 Ohio App.2d 151, 154, we held that the term "convicted," as used in the statute, includes both the finding of guilt and the sentence imposed. Thus, a defendant may be indicted, tried and found guilty of multiple counts involving allied offenses of similar import, as long as he is sentenced under R.C. 2941.25(A) only on one count. State v. Darga (1985), 30 Ohio App.3d 54, 55-56.
 {¶ 25} When sentencing appellant, the court stated that the "kidnapping charges merge with the rape charges * * *." Hence, it only sentenced appellant on one count per incident.
 IV *Page 12 {¶ 26} Appellant argues that there was insufficient evidence to prove the elements of kidnapping as charged in count 20. He maintains that, unlike other counts where the victim said that she had been restrained by appellant's weight, she denied that there had been any other contact between his body and her body other than that involved in the sexual conduct.
 {¶ 27} When considering the sufficiency of evidence supporting a conviction, we view the evidence in a light most favorable to the state to determine whether the state presented evidence showing all the elements of the offense. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 319.
 {¶ 28} Count 20 of the indictment charged that appellant, by force, threat, or deception, removed the victim from the place where appellant had found her or restrained her liberty for the purpose of engaging in sexual activity against the victim's will. This language tracked the elements of kidnapping as defined in R.C. 2905.01(A)(4).
 {¶ 29} We recently stated that `"no movement is required to constitute the offense of kidnapping; restraint of the victim by force, threat, or deception is sufficient. Thus, implicit within every forcible rape (R.C.2907.02[A][1]) is a kidnapping.'" State v. Scott, Cuyahoga App. No. 88084, 2007-Ohio-2111, at ¶ 23, quoting State v. Logan (1979),60 Ohio St.2d 126, 130. *Page 13 
 {¶ 30} Count 20 involved the incident in the mother's room. The victim testified that appellant had called her into her mother's room. They began talking and "playing around" until appellant "pinned me to the bed and that's when I knew not to trust him." She said that she had been lying on her back with appellant lying on top of her. The use of the word "pinned" sufficiently demonstrated that she had been restrained by force and could not move away from him. A reasonable trier of fact could find that appellant pinned her to the bed so that he could engage in sexual activity with her, thus constituting proof of force necessary to show the kind of restraint necessary for kidnapping.
 V {¶ 31} For his fifth assignment of error, appellant complains that the state engaged in prosecutorial misconduct by making a closing argument that was designed to appeal to the passions of the finder of fact. He maintains that the state repeatedly tried to engender sympathy for the child and unreasonably questioned his character by making personal attacks on him.
 {¶ 32} In State v. Lane (1997), 118 Ohio App.3d 230, 235, we stated:
 {¶ 33} "As a general proposition, the state is allowed some latitude or leeway in closing argument. State v. Woodards (1966),6 Ohio St.2d 14, 26, 215 N.E.2d 568. For this reason, `the conduct of a prosecuting attorney during trial will not be made a ground for error unless the conduct deprives defendant of a fair trial.' State v. Apanovitch (1987),33 Ohio St.3d 19, 24, 514 N.E.2d 394. We must `consider the *Page 14 
effect the misconduct had on the jury in the context of the entire trial.' State v. Keenan (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203
(citations omitted)."
 {¶ 34} In addition, we acknowledge that appellant elected to waive his right to a trial by jury. We presume, in cases tried to the court, that the court did not rely on anything in reaching its decision that it should not have relied upon. Columbus v. Guthmann (1963),175 Ohio St. 282, paragraph three of the syllabus.
 {¶ 35} In two of the alleged instances of prosecutorial misconduct the court sustained a defense objection. We find no basis for error in those instances.
 {¶ 36} Appellant also complains that at one point during his cross-examination, the assistant prosecuting attorney asked him "do you understand that you have to wait until I finish asking the question before you can respond?" The transcript does not indicate that appellant had cut off the assistant prosecuting attorney's question, but we recognize that a printed transcript may not reflect nonverbal gestures or cues that may have been apparent to those in the courtroom. Defense counsel did not object to the assistant prosecuting attorney's question, nor does the record give us any basis for concluding that the remark was improper, much less prejudicial to appellant.
 {¶ 37} When the assistant prosecuting attorney commenced her rebuttal closing argument, she commented that a theme in "child cases" was that "time after time after time these kids don't come forward because after all, who is going to believe them over an adult? Who is going to believe them and we end up in this *Page 15 
place where we have a defense lawyer saying there is no evidence." We find this statement to be a fair rebuttal to remarks made by defense counsel in his closing argument on the subject "why do people make up stories?" Defense counsel noted that appellant had never before been in trouble and that the victim's allegations were so out of character that they "shock[ed] the senses." Defense counsel went on to question the lack of evidence or documentation to support the allegations — that "we have nothing but this young girl saying different things happened * * *." The assistant prosecuting attorney's comment fairly responded to defense counsel's closing argument.
 {¶ 38} In rebuttal closing argument, while trying to refute defense evidence that the victim repeatedly called appellant and his daughter after the incidents and begged him to return home, the assistant prosecuting attorney told the court that appellant's theory "fails because it is absurd that this child would call this nasty and rude defendant on the telephone hundreds of times after being told don't call me anymore * * *." The reference to appellant as "nasty and rude" was unnecessary. "A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones." State v.Smith (1984), 14 Ohio St.3d 13, 14. These descriptions of appellant's character were based on the assistant prosecuting attorney's opinion. However, we presume that the court ignored them and focused solely on the evidence. *Page 16 
 {¶ 39} Finally, the assistant prosecuting attorney told the court that she commended the victim for coming forward and that there "aren't too many victims as compelling." Appellant did not object to this statement, so we review it only for plain error. Crim.R. 52(B); State v. Long
(1978), 53 Ohio St.2d 91.
 {¶ 40} The state may comment on a witness' credibility when it neither implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue. State v. Keene (1998),81 Ohio St.3d 646, 666, 1998-Ohio-342. The assistant prosecuting attorney merely pointed out to the court that the victim gave a consistent version of events and had no reason to fabricate her allegations. These comments were not improper and thus did not constitute plain error.
 VI {¶ 41} Finally, appellant complains that counsel was ineffective by failing to object to the admission of victim impact evidence. He argues that the state repeatedly elicited testimony, without objection, to show the changes that the victim underwent after being raped. He claims that this evidence served no other purpose than to inflame the court.
 {¶ 42} To prevail on his claim of ineffective assistance of defense counsel, appellant must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. See Strickland v. Washington
(1984), 466 U.S. 668, 694; State v. Bradley (1989), 42 Ohio St.3d 136. To establish prejudice, appellant must demonstrate that counsel's *Page 17 
deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." State v. Powell (1993), 90 Ohio App.3d 260, 266.
 {¶ 43} The courts exclude victim impact evidence because it is irrelevant and immaterial to the guilt or innocence of the accused — it mainly serves to inflame the passion of the trier of fact. SeeState v. White (1968), 15 Ohio St.2d 146, 151. However, victims may testify as to how a crime has impacted their lives, particularly when the "circumstances of the victims are relevant to the crime as a whole."State v. Williams, 99 Ohio St.3d 439, 2003-Ohio-4164, at ¶ 43.
 {¶ 44} The victim's mother testified to the negative changes in the victim's personality which occurred during the time frame the offenses occurred. Her grades fell dramatically, she lost interest in her hygiene, and began wetting the bed. The victim testified that she began subconsciously ignoring her hygiene because "there was no point." Likewise, she admitted that her grades fell because she lost interest in school.
 {¶ 45} This testimony was relevant particularly in the absence of any physical evidence of rape. The trial court likely found that profound changes in the victim's personality and behavior were circumstantial evidence of the rapes.[4] They were *Page 18 
relevant to proving the rape charges. Hence, counsel had no duty to object to the testimony.
 {¶ 46} Even if counsel had a duty to make an objection to this testimony, we cannot find that the outcome of trial would have been any different. "[A]ny reasonable [trier of fact] would anticipate some changes in behavior or attitude from a rape victim." State v.Buelow, Clark App. No. 2004 CA 18, 2004-Ohio-6052, at T|32. Since this case was tried to the court, we presume that the judge properly differentiated between relevant and non-relevant evidence. Counsel's objection, even if warranted under the circumstances, would not have affected the outcome of trial.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] The court acquitted appellant of one count of rape and one count of kidnapping relating to an incident in which appellant allegedly climbed onto the victim's bed and raped her. The court noted that even the victim agreed that her bed would not support the weight of two persons; hence, it found those allegations lacked credibility.
[2] Miranda v. Arizona (1966), 384 U.S. 436.
[3] Defense counsel made only one objection during the line of questioning about appellant's failure to tell the police about the victim's telephone calls. The state referenced the closing part of appellant's written statement in which he had been asked if there was anything he wished to add to the statement or if there was anything that he had not told the police, but thought the police might need to know. Counsel objected, saying that "what the defendant said and what is in the paper could be two different things. That's her [the assistant prosecuting attorney's] testimony." This objection does not purport to challenge the question on Fifth Amendment grounds.
[4] At trial, appellant tried to suggest that the victim's change in personality was the result of her dating a "bad boy" and that she came forward with her allegations against him only after learning that she had become pregnant with another man's child. The court refused to permit evidence of the victim's pregnancy, however, as it was clear that her rape allegations preceded the date on which she could have become pregnant. *Page 1