[Cite as *State v. Houston*, 2011-Ohio-2793.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No.   95670

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SAMUEL L. HOUSTON

DEFENDANT-APPELLANT

## JUDGMENT:
### AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-521929

**BEFORE:**   Boyle, J., Kilbane, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:**   June 9, 2011

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road
Suite 300
Westlake, Ohio   44145

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Kevin R. Filiatraut
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Samuel Houston, appeals his rape and kidnapping convictions.   He raises two assignments of error for our review:

{¶ 2} "[1.] The trial court erred in denying appellant's [Crim.R. 29] motion for acquittal when there was insufficient evidence to prove the elements of rape and kidnapping.

{¶ 3} "[2.] Appellant's convictions for rape and kidnapping were against the manifest weight of the evidence."

{¶ 4} Finding no merit to his arguments, we affirm.

Procedural History and Factual Background

{¶ 5} In March 2009, the grand jury indicted Houston on three counts: Count 1, rape, in violation of R.C. 2907.02(A)(2), with notice of prior conviction and repeat violent offender specifications; Count 2, kidnapping, in violation of R.C. 2905.01(A)(4), with sexual motivation, notice of prior conviction, and repeat violent offender specifications; and Count 3, gross sexual imposition, in violation of R.C. 2907.05(A)(1), with a repeat violent offender specification. The notice of prior conviction and repeat violent offender specifications were bifurcated and tried to the court. The remaining charges were tried to a jury where the following evidence was presented.

{¶ 6} M.W. testified that she was 13 years old in June 2006 when Houston, who was her mother's live-in boyfriend at that time, sexually abused her while her mother was at work. M.W. stated that she had come home from school in early June and had taken a shower. She was standing in the bathroom with a towel wrapped around her when Houston grabbed her arm and pulled her into her mother's bedroom. She testified: "[h]e put a pillow over my face and — he put his penis into my vagina. He put it halfway in but I told him he was hurting me but he kept going, but he didn't push further." She testified that his penis was in her vagina for five to eight minutes. She stated that he took the pillow off of her face because she "started kind of screaming," and he told her to "be quiet or somebody was going

to hear." M.W. stated that she told Houston that he hurt her, and he replied that he did not mean to hurt her.

{¶ 7} M.W. testified that after the incident had occurred, Houston went downstairs and was pacing. M.W. told him that she was going to tell her mom. But Houston "said not to tell her because she would be mad at both of [them]." M.W. testified that she was afraid to tell her mom after that because she "didn't want her [mother] to look at [her] any different."

{¶ 8} M.W. further testified that on Father's Day of that same year, Houston had put his hand up her skirt while her mom and sister were in another room. She told him to stop and he did. That same day, M.W. said that Houston told her that he loved her. M.W. testified that she told Houston that he was supposed to love her mom.

{¶ 9} M.W. never told anyone about the two incidents until January 2009 when she wrote a poem in school. As part of an assignment for one of her classes, she wrote a poem that began with "who will cry for the little girl." Her teacher gave the assignment after the class had watched Antwoine Fisher, a movie where a boy had written a poem, "who will cry for the little boy." In the poem, she wrote: "Who will cry for the little girl whose mother's boyfriend sometimes touch her and in a way I feel only her boyfriend or husband should but who is afraid to tell her mom because he[r] mom won't believe her."

{¶ 10} M.W.'s teacher gave the poem to the principal, who then called M.W.'s mother and the police.

{¶ 11} M.W.'s mother testified that she began dating Houston when M.W. was 11 years old. Houston lived with them for approximately two years. M.W.'s mother testified that the entire time she was in a relationship with Houston, they only had sexual intercourse four to six times because Houston had erectile dysfunction issues.

{¶ 12} At the close of the state's case, Houston moved for a Crim.R. 29 acquittal, which the trial court denied.

{¶ 13} Houston presented four witnesses on his behalf, including himself, his sister, his doctor, and the superintendent of Warrensville Heights School District.

{¶ 14} Houston's sister testified that she became good friends with M.W.'s mother. She said that even after M.W.'s mother and Houston had broken up, Houston and M.W. were "like father and daughter."

{¶ 15} Larry Ellis, the superintendent of Warrensville Heights School District, testified that in 2006 the school year ended on June 2.

{¶ 16} Dr. Michael Seidman testified that Houston had diabetes, which caused him to have erectile dysfunction. Dr. Seidman treated Houston for erectile dysfunction in November 2005 and April 2006, prescribing him different medications for the problem.

{¶ 17} Houston testified that he only had sexual intercourse with M.W.'s mother three times during their relationship. Houston denied that he ever raped M.W. or put his hand up

her skirt. In fact, Houston denied that he was ever alone with M.W. during the entire time he dated her mother.

{¶ 18} The jury found Houston guilty of Counts 1 and 2, rape and kidnapping with the sexual motivation specification, but could not reach a verdict on Count 3, the gross sexual imposition charge. The trial court found Houston guilty of the notice of prior conviction and repeat violent offender specifications.

{¶ 19} The trial court declared a mistrial on Count 3, and the state dismissed it prior to sentencing without prejudice.

{¶ 20} The trial court found that the rape and kidnapping convictions merged, and the state elected to have Houston sentenced on the rape count. The trial court then sentenced Houston to seven years for rape, and notified him that he would receive five years of mandatory postrelease control upon his release from prison.

Sufficiency and Weight of the Evidence

{¶ 21} In his first assignment of error, Houston contends the state's evidence was not sufficient to convict him of rape and kidnapping. In his second assignment of error, he maintains that the jury lost its way in convicting him of the two charges. We disagree.

{¶ 22} When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 23} In reviewing a claim challenging the manifest weight of the evidence, "[t]he question to be answered is whether there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.  In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  (Internal quotes and citations omitted.)  *Leonard*, 104 Ohio St.3d at ¶81.

{¶ 24} Houston's sufficiency arguments relating to his rape conviction are technically weight of the evidence issues.  He claims "the contradictions in the victim's testimony in the case at bar were such that no reasonable juror could rely on it."

{¶ 25} Houston first raises issues with M.W.'s credibility because she did not report the incidents until 2009, even though she knew that Houston's

conduct was "inappropriate." Houston further maintains that an "equally glaring problem" with M.W.'s testimony is that her statement to police regarding the timing of the two incidents was inconsistent with her trial testimony. M.W. testified that the rape occurred in early June while school was still in session, and the incident where he put his hand up her skirt occurred on Father's Day, which was on June 18, 2006. But in a recorded statement to police, M.W. stated the touching happened first, and then the rape.

{¶ 26} Again, we find this to be a weight of the evidence issue. As for M.W.'s inconsistent statements, the jury heard the inconsistencies and still believed that she was raped. The two incidents had occurred three years before trial, when she was only 13 years old. M.W. had always stated there were only two incidents that had happened, the rape and the touching. And even though she had confused which one occurred first, she had always stated that the rape occurred after school and the skirt incident had occurred on Father's Day.

{¶ 27} Houston further claims that the state failed to present sufficient evidence to prove kidnapping under R.C. 2905.01(A)(4). Count 2 of the indictment, which tracked the statute, charged that Houston, by force, threat, or deception, removed the victim from the place where Houston had found her

or restrained her liberty for the purpose of engaging in sexual activity against the victim's will.   Houston claims that M.W.'s testimony did not establish the element of restraint because it merely showed he led her into her mother's bedroom, not forced her into the bedroom.

{¶ 28} But this court has held that "'no movement is required to constitute the offense of kidnapping; restraint of the victim by force, threat, or deception is sufficient.   Thus, implicit within every forcible rape (R.C. 2907.02[A][1]) is a kidnapping.'"   *State v. Scott*, 8th Dist. No. 88084, 2007-Ohio-2111, ¶23, quoting *State v. Logan* (1979), 60 Ohio St.2d 126, 130, 397 N.E.2d 1345.   See, also, *State v. Blackman*, 8th Dist. No. 88608, 2007-Ohio-4168 ("The victim testified that appellant had called her into her mother's room.   They began talking and 'playing around' until appellant 'pinned [her] to the bed ***.'   She said that she had been lying on her back with appellant lying on top of her.   The use of the word 'pinned' sufficiently demonstrated that she had been restrained by force and could not move away from him.   A reasonable trier of fact could find that appellant pinned her to the bed so that he could engage in sexual activity with her, thus constituting proof of force necessary to show the kind of restraint necessary for kidnapping.").

{¶ 29} Here, M.W. testified that Houston grabbed her arm, pulled her into her mother's bedroom, put a pillow over her face, and put his penis halfway into her vagina. We conclude that this evidence was sufficient to establish force or restraint necessary to prove kidnapping beyond a reasonable doubt.

{¶ 30} As for Houston's remaining arguments that address weight of the evidence issues, including the fact that M.W.'s mother first questioned whether M.W. was telling the truth because she knew Houston had erectile dysfunction problems, the fact that M.W. felt "comfortable" around Houston even after the two incidents, and the fact that M.W. gave other minor inconsistent statements, we conclude that these issues do not transform this case into the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The jury heard all of the testimony, and M.W.'s inconsistent statements, and still chose to believe her over Houston, at least regarding the rape and kidnapping charges.

{¶ 31} Accordingly, Houston's first and second assignments of error are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, A.J., and
MELODY J. STEWART, J., CONCUR